**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RAMON GARCIA,              )
                               )
          Petitioner,       )       2:08-cv-00480-JCM-PAL
                               )
vs.                       )       **ORDER**
                               )
DWIGHT W. NEVEN, *et al.*,   )
                               )
         Respondents.     )
_____/

This action is a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, by a Nevada state prisoner.  This matter comes before the court on the merits of the petition.

**I.  Procedural History**

The facts underlying this case involve petitioner's conviction for multiple counts of robbery, kidnapping, and other related offenses stemming from the robbery of four businesses in Clark County, Nevada, between July 23 and July 31, 2001.  (Exhibit 51, at p. 3).[1]

Petitioner and co-defendant Juan Garcia proceeded to jury trial on August 26, 2003.  (Exhibit 32).  On September 5, 2003, the jury returned verdicts against petitioner, finding him guilty of:

_____

[1]  The exhibits referenced in this order are found in the court's record at ECF Nos. 11-15.

counts I and XXVIII, burglary while in possession of a firearm; counts II and III, robbery with the use of a deadly weapon; counts IV and V, first degree kidnapping with the use of a deadly weapon; count XXVII, conspiracy to commit burglary; count XXIX, conspiracy to commit robbery; count XXX, attempt robbery with the use of a deadly weapon; and counts XXXI, XXXII, and XXXIII, false imprisonment with the use of a deadly weapon.  (Exhibits 44 & 45).

On October 23, 2003, the petitioner was sentenced to the following:

| | |
|---|---|
| count I: | 26-120 months prison term |
| count II: | 26-120 months, plus an equal and consecutive term for use of a deadly weapon, concurrent to count I |
| count III: | 26-120 months, plus an equal and consecutive term for use of a deadly weapon, concurrent to counts I and II |
| count IV: | 5 years to life, plus an equal and consecutive term for the use of a deadly weapon, to run consecutive to the other counts |
| count V: | 5 years to life, plus an equal and consecutive term for use of a deadly weapon, to run consecutive to the other counts |
| count XXVII: | 12 months minimum, concurrent to the other counts |
| count XXVIII: | 26-120 months, concurrent to the other counts |
| count XXIX: | 12-48 months, concurrent to the other counts |
| count XXX: | 16-72 months, concurrent to the other counts |
| count XXXI: | 12-48 months, plus an equal and consecutive term for use of a deadly weapon, consecutive to the other counts |
| count XXXII: | 12-48 months, plus an equal and consecutive term for use of a deadly weapon, concurrent to the other counts |
| count XXXIII: | 12-28 months, plus an equal and consecutive term for use of a deadly weapon, consecutive to the other counts, with 784 days credit for time served. |

(Exhibits 46 & 47).  The judgment of conviction was filed on November 3, 2003.  (Exhibit 47).

Petitioner appealed his conviction.  (Exhibit 48).  On June 23, 2005, the Nevada Supreme Court filed its opinion affirming in part and reversing in part.  (Exhibit 51).  The Nevada Supreme

2

1   Court set aside petitioner's convictions for false imprisonment and the conviction for conspiracy to

2   commit robbery, and affirmed the convictions on the remaining counts.  (*Id.*).  Remittitur issued on

3   July 19, 2003.  (Exhibit 52).  An amended judgment of conviction was filed on February 10, 2006.

4   (Exhibit 57).

5          On April 13, 2006, petitioner filed a post-conviction habeas petition in state court and an

6   affidavit in support of the petition.  (Exhibits 59 & 60).  After a hearing, the state district court

7   granted the petition as to counts XIII and XXIX, the conspiracy to commit robbery counts, and

8   denied the petition as to the remaining counts of the information.  (Exhibit 62).

9          On September 22, 2006, petitioner appealed the state district court's ruling.  (Exhibit 63).

10  The Nevada Supreme Court filed its order affirming the district court's decision on September 6,

11  2007.  (Exhibit 64).  Remittitur issued November 13, 2007.  (Exhibit 67).

12         On April 7, 2008, petitioner mailed his federal habeas petition to this court.  (ECF No. 3, at p.

13  1).  Petitioner raises eleven grounds for relief in his federal habeas petition.  (ECF No. 3).  By order

14  filed June 24, 2009, this court dismissed as moot the entirety of ground 2 of the federal petition.

15  (ECF No. 17).  The court also dismissed as moot the portion of grounds 1 and 3 relating to the

16  charges of conspiracy.  (*Id.*).  Respondents have filed an answer to the petition.  (ECF No. 18).

17  **II.  Federal Habeas Corpus Standards**

18         The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d),

19  provides the legal standard for the court's consideration of this habeas petition:

20              An application for a writ of habeas corpus on behalf of a person in
                custody pursuant to the judgment of a State court shall not be granted
21              with respect to any claim that was adjudicated on the merits in State
                court proceedings unless the adjudication of the claim –
22
                (1) resulted in a decision that was contrary to, or involved an
23              unreasonable application of, clearly established Federal law, as
                determined by the Supreme Court of the United States; or
24

25

26
                                                    3

1

2

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

3

4    The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications

5  in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect

6  to the extent possible under law."  *Bell v. Cone,* 535 U.S. 685, 693-94 (2002).  A state court decision

7  is contrary to clearly established United States Supreme Court precedent, within the meaning of 28

8  U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the

9  Supreme Court's] cases" or "if the state court confronts a set of facts that are materially

10 indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different

11 from [the Supreme Court's] precedent."  *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting

12 *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

13    A state court decision is an unreasonable application of clearly established United States

14 Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies

15 the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies

16 that principle to the facts of the prisoner's case."  *Lockyer v. Andrade,* 538 U.S. at 75 (quoting

17 *Williams,* 529 U.S. at 413).  The "unreasonable application" clause requires the state court decision

18 to be more than merely incorrect or erroneous; the state court's application of clearly established

19 federal law must be objectively unreasonable.  *Id.* (quoting *Williams,* 529 U.S. at 409).

20    In determining whether a state court decision is contrary to, or an unreasonable application of

21 federal law, this court looks to the state courts' last reasoned decision.  *See Ylst v. Nunnemaker*, 501

22 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert.*

23 *denied*, 534 U.S. 944 (2001).  Moreover, "a determination of a factual issue made by a state court

24 shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the

25 presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

26 */ / / / / / / / /*

4

**III. Discussion**

    **A. Ground 1**

    Petitioner claims there was insufficient evidence at trial to support his convictions for false imprisonment and kidnapping.  (ECF No. 3, at pp. 3-5).  This court previously dismissed the portion of ground 1 relating to the charge of false imprisonment, because the conviction on that count was reversed on direct appeal by the Nevada Supreme Court.  (ECF No. 17; Exhibit 51, a pp. 6-8).  As such, the remaining claim before the court is petitioner's claim that there was insufficient evidence to support the kidnapping charge.

    When a habeas petitioner challenges the sufficiency of evidence to support his conviction, the court reviews the record to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000).  The *Jackson* standard does not focus on whether a correct guilt or innocence determination was made, but whether the jury made a rational decision to convict or acquit.  *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  Under the *Jackson* standard, the prosecution has no obligation to rule out every hypothesis except guilt.  *Wright v. West*, 505 U.S. 277, 296 (1992) (plurality opinion); *Jackson*, 443 U.S. at 326; *Schell*, 218 F.3d at 1023.  *Jackson* presents "a high standard" to habeas petitioners claiming insufficiency of the evidence.  *Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000).

    Sufficiency claims are limited to a review of the record evidence submitted at trial.  *Herrera*, 506 U.S. at 402.  Such claims are judged by the elements defined by state law.  *Jackson*, 443 U.S. at 324 n.16.  The reviewing court must respect the exclusive province of the fact-finder to determine the credibility of witnesses, to resolve evidentiary conflicts, and to draw reasonable inferences from proven facts.  *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996).  The federal district court must assume the trier of fact resolved any evidentiary conflicts in favor of the prosecution,

even if the determination does not appear on the record, and must defer to that resolution.  *Jackson*, 443, U.S. at 326.

Under Nevada state law, first-degree kidnapping is "the willful seizing, confining, or carrying away of a live person."  *Ducksworth v. State*, 113 Nev. 780, 793, 942 P.2d 157, 166 (1997); NRS 200.310(1).  A kidnapping that occurs in conjunction with a robbery requires movement "over and above" that required for the robbery, and must substantially increase the risk of harm beyond that necessarily present with just robbery.  *Wright v. State*, 94 Nev. 415, 417-18, 581 P.2d 442, 443-44 (1978).  Petitioner has not demonstrated that his actions failed to meet these requirements.  In reviewing this claim on direct appeal, the Nevada Supreme Court rejected petitioner's claim of insufficiency of the evidence.  (Exhibit 51, at pp. 9-11).  The Nevada Supreme Court found that, at the Fuel Injection Systems robbery, petitioner held the victims at gunpoint for 15 minutes, then moved the victims to the back office, where he ordered them to lie face down and bound them with duct tape.  (Exhibit 51, at p. 11).  This demonstrates that petitioner moved the victims over and above that required for robbery, and that the risk of harm to the victims was substantially increased, beyond that necessary to commit the robbery, as the victims were held at gunpoint and duct taped.  In denying petitioner's insufficiency of the evidence claim, the Nevada Supreme Court cited to and applied the correct federal standard for insufficiency of the evidence claims, *Jackson*, 443 U.S. 307. (Exhibit 51, at pp. 9-11).  The factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  The court denies habeas relief on ground 1 of the petition.

/ / / / / / / / / / /

/ / / / / / / / / /

6

**B.  Ground 3**

Petitioner claims that his convictions for both conspiracy to commit robbery and conspiracy to commit burglary were unconstitutional.  (ECF No. 3, at pp. 12-14).  This court previously dismissed the portion of ground 3 relating to the charge of conspiracy to commit robbery, because the conviction on that count was reversed on direct appeal by the Nevada Supreme Court.  (ECF No. 17; Exhibit 51).

On further review, this court finds that the entirety of ground 3 must be dismissed as moot. Petitioner's claim is that his convictions for both conspiracy to commit robbery and conspiracy to commit burglary violated double jeopardy.  (ECF No. 3, pp. 13-14).  The Nevada Supreme Court resolved the double jeopardy issue by finding insufficient evidence to support the guilty verdict as to the conspiracy to commit robbery charge.  (Exhibit 51, at pp. 19-25).  The conviction for conspiracy to commit robbery was therefore vacated.  (*Id.*).  The federal petition does not challenge the sufficiency of the evidence supporting the conspiracy to commit burglary charge, but rather, advances a double jeopardy argument because petitioner was convicted of two conspiracy counts, when in fact, he is before this court now convicted of only one of those counts.  Because the Nevada Supreme Court vacated the conspiracy to commit robbery conviction, the double jeopardy argument asserted in ground 3 of the federal petition is moot.  (Exhibit 51, at p. 25).  Ground 3 is dismissed as moot, in its entirety.

**C.  Ground 4**

Petitioner contends that his due process rights were violated when the trial court refused to hold a hearing and conduct a full inquiry into his motion to appoint new counsel.  (ECF No. 3, at pp. 16-20).

**1.  Relevant Facts**

Petitioner had appointed counsel for his criminal trial and pretrial matters.  On August 21, 2003, petitioner filed a "motion to dismiss counsel."  (Exhibit 28).  Petitioner complained of

1   counsel's alleged failures to investigate the case and communicate with him.  (Exhibit 28, at p. 2).

2   The motion was filed at the August 21, 2003, calendar call, the pretrial hearing held days before the

3   start of trial, for which respondents have provided a transcript.  (Exhibit 29).  At this hearing, trial

4   counsel responded that he had gone to visit petitioner at jail with the use of a Spanish language

5   interpreter.  (Exhibit 29, at p. 3).  Counsel indicated that he did not leave discovery for petitioner at

6   the jail because he did not want someone else to read it and become a witness.  (*Id.*).  Petitioner

7   stated that he was not given any paperwork.  (*Id.*, at p. 4).  The court noted that trial was set to begin

8   days later, and the court stated that it would not allow a delay in the proceeding.  (*Id.*).  Trial

9   counsel agreed to provide petitioner with "all the paperwork."  (*Id.*, at p. 5).  The hearing concluded, without

10  an express finding that the motion for new counsel had been denied, but the fact that the court stated

11  it would not delay the trial based on petitioner's motion suggests that the motion was denied.

12                      **2.  Legal Standard and Nevada Supreme Court's Ruling**

13          The Nevada Supreme Court considered and rejected petitioner's claim on direct appeal.

14  (Exhibit 51, at pp. 11-16).  The Nevada Supreme Court analyzed petitioner's claim under the

15  standard set forth in *Young v. State*, 120 Nev. 963, 102 P.3d 572 (2004), which is almost entirely

16  derived from the Ninth Circuit's decision in *United States v. Moore*, 159 F.3d 1154, 1158-59 (9th Cir.

17  1998).  The Nevada Supreme Court applied the *Young/Moore* three-factor test to petitioner's case

18  and found that he was not entitled to relief.  (Exhibit 51, at pp. 11-16).  The court considers these

19  three factors when faced with appellate review of a defendant's motion to dismiss counsel: (1) the

20  extent of the conflict; (2) the adequacy of the inquiry; and (3) the timeliness of the motion.  *Young*,

21  120 Nev. at 968; *Moore*, 159 F.3d at 1158, 1159 n.3 ("We apply the same test for assessing whether

22  the district court erred in failing to substitute counsel as we do in evaluating whether an

23  irreconcilable conflict exists.").

24          The Nevada Supreme Court made several findings of fact on its review, which are binding on

25  this court. 28 U.S.C. § 2254(e)(1).  As to the first factor, the extent of the conflict, the Nevada

26

Supreme Court found that petitioner's statements that his attorney never visited him were belied by the record, since trial counsel had visited petitioner on numerous occasions and had communicated with him about a plea offer with the assistance of an interpreter.  (Exhibit 51, at pp. 13-14). Regarding the claim that no discovery was made available to petitioner, the Nevada Supreme Court noted that this issue was resolved when trial counsel agreed to provide the documents after petitioner raised the issue with the court.  (*Id.*).

As to the second factor, the timeliness of the motion, the Nevada Supreme Court found that the motion, filed on the eve of trial, suggested a dilatory motive.  (Exhibit 51, at p. 16).  Specifically, the Nevada Supreme Court found as follows:

> Here, Garcia filed his motion in open court at the August 21, 2003 calendar call, just days before his trial was set to begin.  As noted above, Sciscento was appointed to represent Garcia in January 2003, and in the ensuing months he spoke with defendant regarding discovery and plea negotiations.  However, at no time did Garcia attempt to notify the court that there was a conflict with his counsel. Garcia had months to express his concerns to his counsel and the court, but he did not do so.  He waited until the eve of trial and filed his motion in open court – a fact suggestive of a dilatory motive.  The record indicates that Garcia's motion, although timely in the sense that it was filed before the actual start of the trial, would have resulted in unnecessary inconvenience and delay, if granted.

(Exhibit 51, at pp. 14-15) (footnotes and citations omitted).

As to the third factor, the adequacy of the trial court's inquiry, the Nevada Supreme Court found that petitioner did not want a fuller hearing than what he received, as he "refused to speak to the court regarding the matter, stating, 'I just want to turn this paperwork into you, I don't want to speak.'"  (Exhibit 51, at p. 15).  "His attorney, Mr. Sciscento, noted that he had spoken with Garcia and reviewed the discovery with him through an interpreter."  (*Id.*, at p. 16).  The Nevada Supreme Court found that the "real concern" was that petitioner wanted a copy of the discovery, which counsel agreed to provide.  (*Id.*).  The Nevada Supreme Court concluded that the trial court's limited inquiry was adequate given the circumstances of the motion.  (*Id.*).

1    The factual findings of the Nevada Supreme Court are presumed correct.  28 U.S.C. §

2    2254(e)(1).  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's

3    ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as

4    determined by the United States Supreme Court, or that the ruling was based on an unreasonable

5    determination of the facts in light of the evidence presented in the state court proceeding.  This court

6    denies habeas relief as to ground 4 of the petition.

7         **D.  Ground 5**

8    Petitioner contends that his right to confrontation was violated when the trial court prohibited

9    him from cross-examining two witnesses.  (ECF No. 3, at pp. 21-23).

10   Generally, the admissibility of evidence is a matter of state law, and is not reviewable in a

11   federal habeas corpus proceeding.  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *Middleton v. Cupp*,

12   768 F.2d 1083, 1085 (9th Cir.), *cert. denied,* 478 U.S. 1021 (1985).  The role of the federal court is

13   "limited to determining whether the admission of evidence rendered the trial so fundamentally unfair

14   as to violate due process."  *Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998); *see Fuller v.*

15   *Roe*, 182 F.3d 699, 703 (9th Cir. 1999).

16   The Sixth Amendment's Confrontation Clause provides that: "In all criminal prosecutions,

17   the accused shall enjoy the right . . . to be confronted with the witnesses against him."   U.S. Const.

18   Amend. VI.  "The right to confront and cross-examine witnesses and to call witnesses in one's own

19   behalf have long been recognized as essential to due process."  *Chambers v. Mississippi*, 410 U.S.

20   284, 294 (1973).  Moreover, the right to confrontation is limited to specific guarantees – that a

21   criminal defendant will be able to assess the credibility of a live, in-court, face-to-face questioning.

22   *See Crawford v. Washington*, 541 U.S. 36 (2004).  The right to cross-examination under the

23   Confrontation Clause is a "functional" right which falls into two categories: "cases involving the

24   admission of out-of-court statements and cases involving restrictions imposed by law or by the trial

25   court of the scope of cross-examination."  *Kentucky v. Stincer*, 482 U.S. 730, 737 (1987) (*quoting*

26

1    *Delaware v. Fensterer*, 474 U.S. 15, 18 (1985)).  "Of course, the Confrontation Clause guarantees

2    only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in

3    whatever way, and to whatever extent, the defense might wish.'"  *Stincer*, 482 U.S. at 740 (*quoting*

4    *Fensterer*, 474 U.S. at 20 (emphasis in original)).

5         In the instant case, petitioner claims that the trial court prohibited him from cross-examining

6    two witnesses that testified at trial against petitioner's brother Juan, pertaining to two robberies for

7    which petitioner was not charged.  As background, petitioner was tried with his brother during a joint

8    trial.  Petitioner faced charges pertaining to two of a total of four separate robberies.  It is undisputed

9    that as to the two other robberies, petitioner was not involved, but his brother Juan was identified as

10   the sole perpetrator of those crimes.

11        On August 29, 2003, trial counsel raised an issue that he was not allowed to cross-examine

12   witnesses pertaining to the "Los Alamitos" and "B&H Radiators" robberies, neither of which

13   involved petitioner.  (Exhibit 37, at p. 73).  The record reflects that Morales testified for B&H

14   Radiators earlier that day, and when co-counsel finished his examination, petitioner's counsel was

15   given an opportunity to conduct a cross-examination, but declined to do so.  (Exhibit 37, at p. 37).

16   Next, witness Luna testified for B&H Radiators.  Again, the court gave petitioner's attorney the

17   opportunity to cross-examine the witness, and trial counsel declined.  (Exhibit 37, at p. 72).  Trial

18   counsel stated that he was still "not clear" whether he had a right to cross-examine witnesses who

19   did not implicate his client, petitioner in the instant case.  (Exhibit 37, at p. 74).  A conversation then

20   occurred regarding amending the charges to make clear that petitioner was not involved in either the

21   Los Alamitos or B&H Radiators robberies.  (Exhibit 37, at p. 74).

22        Earlier, on the morning of August 27, 2003, two witnesses testified.  Lozada testified for

23   Fuel Systems, which is one of the robberies in which petitioner was implicated.  (Exhibit 34, at p.

24   38).  Petitioner's counsel conducted a cross-examination of that witness.  (Exhibit 34, at p. 87).  The

25

26

11

other witness who testified was Barre, also from Fuel Systems.  (Exhibit 34, at p. 117).  Petitioner's counsel conducted a cross-examination of Barre.  (Exhibit 34, at p. 129).

Thereafter, and on August 28, 2003, several more witnesses testified.  Witness Nunez testified for Los Alamitos.  (Exhibit 36, at p. 20).  Although that crime did not involve petitioner, his lawyer was given the chance to cross-examine the witness, but he declined to do so.  (Exhibit 36, at p. 53).  Witness Fox testified as the crime scene analyst and was cross-examined by petitioner's trial counsel.  (Exhibit 36, at p. 74).  Witness Junior Nunez testified for Los Alamitos.  (Exhibit 36, at p. 79).  Again, petitioner's counsel was given the chance to conduct a cross-examination and declined to do so.  (Exhibit 36, at p. 103).

Additionally, witness Lum testified as a crime scene analyst, and was cross-examined by trial counsel.  (Exhibit 36, at p. 117).  Witness Ayala then testified for Los Alamitos.  (Exhibit 36, at p. 119).  Petitioner's counsel was given a chance to conduct cross-examination, and even started to do so, before declaring that he was "waiving" his cross-examination.  (Exhibit 36, at p. 131).  Finally, witness Hansen testified for B&H Radiators.  (Exhibit 36, at p. 133).  As with every other witness in the case, the court gave petitioner's counsel the opportunity to cross-examine this witness.  (Exhibit 36, at p. 175).  Petitioner's trial counsel declined to cross-examine Hansen.  (Exhibit 36, at p. 175).

Every witness that testified prior to the prohibition of cross-examination raised in the petition reveals that petitioner's claims are belied by the record.  Petitioner's counsel had the opportunity to cross-examine every witness that testified up to that point.  The record reflects that, as to those witnesses who did not testify against petitioner, trial counsel could have, but elected not to conduct a cross-examination.  Petitioner's claim that he was prohibited from cross-examining witnesses is belied by the record.

In analyzing this claim, the Nevada Supreme Court cited to and applied the correct United States Supreme Court authority, *Chambers v. Mississippi*, 410 U.S. 284 (1973).  (Exhibit 51, at p. 18).  The Nevada Supreme Court rejected petitioner's claim, concluding that petitioner had no right

1    to cross-examine witnesses, other than those testifying against him.  (Exhibit 51, at pp. 17-19).  It

2    was not objectively unreasonable for the Nevada Supreme Court to find that the witnesses at issue

3    did not testify against petitioner, and that petitioner had no right to cross-examine such witnesses.

4    Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was

5    contrary to, or involved an unreasonable application of, clearly established federal law, as

6    determined by the United States Supreme Court, or that the ruling was based on an unreasonable

7    determination of the facts in light of the evidence presented in the state court proceeding.

8           Finally, a Confrontation Clause violation is subject to harmless error analysis.  *United States*

9    *v. Bowman*, 215 F.3d 951, 961 (9th Cir. 2000).  "In the context of habeas petitions, the standard of

10   review is whether a given error 'had substantial and injurious effect or influence in determining the

11   jury's verdict.'" *Christian v. Rhode*, 41 F.3d 461, 468 (9th Cir. 1994) (quoting *Brecht v. Abrahamson*,

12   507 U.S. 619, 637 (1993)).

13          Petitioner suggests that with cross-examination, he could have established that the "pattern of

14   conduct" of the two robberies in which he was not involved mirrored that of the robberies in which

15   he was allegedly involved, and that this would suggest that his brother Juan committed all of the

16   crimes.  Yet, petitioner's counsel did not argue misidentification.  Additionally, as pointed out by the

17   Nevada Supreme Court, there was nothing stopping petitioner's counsel from calling the witnesses in

18   question during his defense case-in-chief.  (Exhibit 51, at p. 19).  The failure to have done so belies

19   petitioner's claim of prejudice.  Finally, petitioner does not identify the specific witnesses from

20   whom he would have obtained testimony or how such witnesses would have testified.  To the extent

21   that petitioner sought evidence that he was not involved in the Los Alamitos or B&H Radiators

22   crimes, or how those crimes were committed, that evidence was already presented.  Petitioner has

23   failed to demonstrate prejudice.  Thus, even if petitioner was denied the right to cross-examine

24   witnesses, and this violated his right to confront witnesses who did not testify against him, the error

25

26

13

1   did not have a substantial and injurious effect on the jury's verdict.  This court denies habeas relief

2   on ground 5 of the petition.

3       **E.  Ground 6**

4       Petitioner contends that Nevada's reasonable doubt instruction is unconstitutional.  (ECF No.

5   3, at pp. 25-28).  The exact same instruction was found to comply with due process, as determined by

6   the Ninth Circuit in *Ramirez v. Hatcher*, 136 F.3d 1209 (9th Cir. 1998), *cert. denied* 525 U.S. 967

7   (1998).  Ground 6 is without merit and is denied.

8       **F.  Ground 7**

9       Petitioner alleges that his trial counsel was ineffective for failing to seek a severance from the

10  joint trial with petitioner's brother, based on the allegation that petitioner looked like his brother and

11  was therefore found "guilty by association."  (ECF No. 3, at pp. 30-32).

12      Ineffective assistance of counsel claims are governed by the two-part test announced in

13  *Strickland v. Washington,* 466 U.S. 668 (1984).  In *Strickland*, the Supreme Court held that a

14  petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the

15  attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the

16  Sixth Amendment, and (2) that the deficient performance prejudiced the defense.  *Williams v.*

17  *Taylor,* 529 U.S. 362, 390-391 (2000) (citing *Strickland,* 466 U.S. at 687).  To establish

18  ineffectiveness, the defendant must show that counsel's representation fell below an objective

19  standard of reasonableness.  *Id.*  To establish prejudice, the defendant must show that there is a

20  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

21  would have been different.  *Id.*  A reasonable probability is "probability sufficient to undermine

22  confidence in the outcome."  *Id.*  Additionally, any review of the attorney's performance must be

23  "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in

24  order to avoid the distorting effects of hindsight.  *Strickland,* 466 U.S. at 689.  It is the petitioner's

25

26

14

1    burden to overcome the presumption that counsel's actions might be considered sound trial strategy.

2    *Id.*

3          Ineffective assistance of counsel under *Strickland* requires a showing of deficient

4    performance of counsel resulting in prejudice, "with performance being measured against an

5    'objective standard of reasonableness,'. . . 'under prevailing professional norms.'" *Rompilla v.*

6    *Beard,* 545 U.S. 374, 380 (2005) (quotations omitted).  If the state court has already rejected an

7    ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary

8    to, or an unreasonable application of the *Strickland* standard.  *See Yarborough v. Gentry,* 540 U.S. 1,

9    5 (2003).  There is a strong presumption that counsel's conduct falls within the wide range of

10   reasonable professional assistance.  *Id.*

11         The United States Supreme Court recently described federal review of a state supreme court's

12   decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen v. Pinholster*,

13   131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)).  The

14   Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance

15   through the "deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted).  Moreover,

16   federal habeas review of an ineffective assistance of counsel claim is limited to the record before the

17   state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 131 S.Ct. at 1398-1401.

18         The Nevada Supreme Court addressed the claim raised in ground 7, as follows:

19               First, Garcia claimed that trial counsel was ineffective for failing to
                 move to sever his trial from his brother's trial.  Garcia claimed that the
20               trials should have been severed because Garcia and his brother, Juan
                 Garcia, looked alike, which made misidentification more likely.
21               Garcia also claimed that the joint trial affected his decision to testify,
                 resulting in a <u>Bruton</u> violation, because he did not want to assist in the
22               criminal prosecution of his brother.

23               Garcia failed to demonstrate that trial counsel's performance was
                 deficient or that he was prejudiced.  A defendant is entitled to a
24               severed trial if he presents a sufficient showing of facts demonstrating
                 that substantial prejudice would result from a joint trial.  Garcia did not
25               demonstrate that he was substantially prejudiced by the joint trial or
                 that the joint trial was improper.  Despite Garcia's assertions about the

26

                                          15

1
2
3
4
5

> potential for misidentification, there were significant differences in Garcia's and his brother's physical appearances.  Further the State's witness Fernando Lozada, who Garcia alleged exonerated him at trial, testified at trial that he was one hundred percent certain that Garcia was the man who robbed him at gunpoint.  Finally, Garcia failed to show that he was prevented from testifying merely because he did not want to implicate his brother and also failed to show that a <u>Bruton</u> violation occurred.  Therefore, we conclude that the district court did not err in denying this claim.

6   (Exhibit 64, at pp. 2-3) (footnotes and citations omitted).  The Nevada Supreme Court cited to and

7   applied the correct federal standard for ineffective assistance of counsel claims, *Strickland v.*

8   *Washington*, 466 U.S. 668 (1984).  (Exhibit 64, at p. 2, n.3).  The Nevada Supreme Court further

9   cited to and correctly analyzed petitioner's claim under *Bruton v. United States*, 391 U.S. 123 (1968).

10  (Exhibit 64, at p. 3).  Petitioner has failed to meet his burden of proving that the Nevada Supreme

11  Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal

12  law, as determined by the United States Supreme Court, or that the ruling was based on an

13  unreasonable determination of the facts in light of the evidence presented in the state court

14  proceeding.  Habeas relief is denied as to ground 7.

15  **G.  Ground 8**

16      Petitioner claims that his trial counsel was ineffective for failing to seek to exclude evidence

17  seized from a search of petitioner's brother's car.  (ECF No. 3, at pp. 34-35).  The Nevada Supreme

18  Court rejected this claim, ruling as follows:

19
20
21
22
23
24

> Second, Garcia claimed that his trial counsel was ineffective for failing to challenge the illegal search of the vehicle in which his brother was traveling when arrested.  Garcia claimed that the firearms discovered inside the vehicle and the evidence discovered in a subsequent search of his apartment should have been excluded pursuant to the fruit of the poisonous tree doctrine.  Garcia failed to demonstrate that trial counsel's performance was deficient or that he was prejudiced.  The record indicates that Garcia's brother consented to a search of the vehicle.  Garcia was not in the vehicle when it was stopped or searched, and Garcia did not assert an ownership interest in the vehicle.  Accordingly, the district court did not err in denying this claim.

25
26

16

1    (Exhibit 64, at p. 4) (footnotes and citations omitted).  The factual findings of the state court are

2    presumed correct.  28 U.S.C. § 2254(e)(1).  The Nevada Supreme Court cited to and applied the

3    correct federal standard for ineffective assistance of counsel claims, *Strickland v. Washington*, 466

4    U.S. 668 (1984).  (Exhibit 64, at p. 2-5).  The Nevada Supreme Court also cited to and correctly

5    analyzed petitioner's claim under *Rakas v. Illinois,* 439 U.S. 128 (1978).  (Exhibit 64, at p. 4).

6    Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was

7    contrary to, or involved an unreasonable application of, clearly established federal law, as

8    determined by the United States Supreme Court, or that the ruling was based on an unreasonable

9    determination of the facts in light of the evidence presented in the state court proceeding.  This court

10   denies habeas relief on ground 8.

11       **H.  Ground 9**

12       Petitioner claims that his trial counsel was ineffective for failing to argue a lack of probable

13   cause to support his arrest, or to argue delay in terms of a probable cause determination.  (ECF No. 3,

14   at pp. 37-38).  The Nevada Supreme Court rejected this claim, ruling as follows:

15               Third, Garcia claimed that defense counsel was ineffective for failing
             to challenge Garcia's arrest for lack of probable cause.  Garcia claimed
16           that he was arrested based on the mere fact that he was living in an
             apartment with his brother.  Garcia failed to demonstrate that trial
17           counsel's performance was deficient or that he was prejudiced.  The
             record indicates that there was probable cause to arrest Garcia.  In
18           particular, two victims identified Garcia, in a photographic lineup, as
             one of the perpetrators of the robbery.  Several items taken during the
19           robberies were recovered in the apartment that Garcia shared with his
             brother.  Given this evidence, there is no indication that a challenge to
20           the probable cause in support of the arrest would have been successful.
             Thus, the district court did not err in denying this claim.

21   (Exhibit 64, at pp. 4-5) (footnotes and citations omitted).  The factual findings of the state court are

22   presumed correct.  28 U.S.C. § 2254(e)(1).  Petitioner has failed to meet his burden of proving that

23   the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of,

24   clearly established federal law, as determined by the United States Supreme Court, or that the ruling

25

26

1    was based on an unreasonable determination of the facts in light of the evidence presented in the

2    state court proceeding.  Habeas relief is denied as to ground 9.

3        **I. Ground 10**

4        Petitioner claims that counsel was ineffective for failing to challenge an eyewitness'

5    photographic identification of him on the basis that he did not have an attorney present during the

6    identification.  (ECF No. 3, at pp. 40-41).  The Nevada Supreme Court addressed this claim:

> Fourth, Garcia claimed that defense counsel was ineffective in failing
> to challenge the victim's initial pretrial identification of Garcia in a
> photographic lineup.  Specifically, Garcia claimed that defense counsel
> was not present at the identification, and the State's witness Lozada
> did not identify Garcia as the man who robbed him.  Garcia failed to
> demonstrate that trial counsel's performance was deficient or that he
> was prejudiced.  Counsel is not required to be present at a
> photographic identification and Garcia's Sixth Amendment right to
> counsel had not attached at that point.  Garcia further failed to
> demonstrate that a challenge to the legality of the pretrial identification
> had a reasonable likelihood of success.  Accordingly, the district court
> did not err in denying this claim.

14   (Exhibit 64, at p. 5) (footnotes and citations omitted).  The Nevada Supreme Court cited to and

15   applied the correct federal standard for ineffective assistance of counsel claims, *Strickland v.*

16   *Washington*, 466 U.S. 668 (1984).  (Exhibit 64, at p. 2-5).  The Nevada Supreme Court also cited to

17   and correctly analyzed petitioner's claim under *Barone v. State*, 109 Nev. 1168, 866 P.2d 291

18   (1993), which relies heavily on *Kirby v. Illinois*, 406 U.S. 682 (1972) (holding that there is no

19   constitutional right to counsel during a pre-indictment photographic lineup).  (Exhibit 64, at p. 5).

20   Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was

21   contrary to, or involved an unreasonable application of, clearly established federal law, as

22   determined by the United States Supreme Court, or that the ruling was based on an unreasonable

23   determination of the facts in light of the evidence presented in the state court proceeding.  This court

24   denies habeas relief on ground 10.

25   / / / / / / / / /

26   / / / / / / / /

18

1        **J.  Ground 11**

2        Petitioner claims ineffective assistance of appellate counsel.  (ECF No. 3, at pp. 43-46).

3  Petitioner claims that appellate counsel failed to seek a rehearing on direct appeal regarding whether

4  the victims in one of the robberies were moved outside a building, rather than inside a building.

5  (*Id.*).  The *Strickland* standard, discussed earlier in this order, applies to challenges of effective

6  appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  Appellate counsel has no

7  constitutional duty to raise every non-frivolous issue requested by the client.  *Jones v. Barnes*, 463

8  U.S. 745, 751-54 (1983).

9        In reviewing petitioner's claim of ineffective assistance of appellate counsel, the Nevada

10 Supreme Court ruled:

11              Garcia claimed that appellate counsel was ineffective for failing to file
                a petition for rehearing challenging this court's decision in his direct
12              appeal.  In the opinion in his direct appeal, this court stated that Garcia
                "ordered the two victims <u>outside the building</u> to the back of a truck,
13              where he held them for 15 minutes at gunpoint."  (Emphasis added).
                Garcia argued that appellate counsel should have argued that this court
14              relied on the erroneous fact that the victims were moved outside the
                building in determining that the convictions for first-degree kidnapping
15              were not incidental to the robbery.

16              Garcia has failed to show that appellate counsel's performance was
                deficient or that he was prejudiced.  In <u>Mendoza v. State</u>, this court
17              held that dual convictions for first-degree kidnapping and robbery are
                appropriate including "where the movement or restraint serves to
18              substantially increase the risk of harm to the victim over and above
                that necessarily present in a associated offense . . . [or] where the
19              restraint or movement of the victim substantially exceeds that required
                to complete the associated crime charged."  In this case, Garcia and his
20              accomplice held the victims at gunpoint for fifteen minutes, took them
                into a back room, ordered them to lie facedown, and bound them with
21              duct tape.  The movement and restraint exceeded that required to
                commit the act of robbery itself.  The fact that the victims were moved
22              inside and not outside the building is not material and did not affect
                our conclusion that dual convictions for kidnapping and robbery were
23              appropriate.  Accordingly, the district court did not err in denying this
                claim.
24
   (Exhibit 64, at pp. 6-7) (emphasis in original) (footnotes and citations omitted).
25

26

The Nevada Supreme Court applied the correct federal standard for ineffective assistance of appellate counsel claims.  (Exhibit 64, at pp. 5-7).  The factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This court denies habeas relief as to ground 11.

**IV.  Certificate of Appealability**

In order to proceed with an appeal, petitioner must receive a certificate of appealability.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 9th  Cir. 2001).  Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484).  In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*  This court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard.  The court will therefore deny petitioner a certificate of appealability.

**V.  Conclusion**

**IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus is **DENIED IN ITS ENTIRETY**.

1    **IT IS FURTHER ORDERED** that petitioner's motion (ECF No. 21) for a free copy of the

2    docket sheet in this case is **GRANTED.**  The clerk of court shall send petitioner a copy of the docket

3    sheet in the instant case.

4        **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF**

5    **APPEALABILITY.**

6        **IT IS FURTHER ORDERED** that the clerk **SHALL ENTER JUDGMENT**

7    **ACCORDINGLY.**

8    Dated this ___13th___ day of January, 2012.

9

10

11   UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

21